# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## Case No. 11-62628-Civ-SCOLA

RUTH MUZUCO,

      Plaintiff,

vs.

RE$UBMITIT, LLC et al.,

      Defendants.

_____/

## ORDER ON MOTIONS TO DISMISS

THIS MATTER is before the Court upon the Motions to Dismiss [ECF Nos. 16, 17], filed by Re$ubmitIt, LLC and BSG Financial (together, the "Re$ubmitIt Defendants"), and BankAtlantic.  For the reasons explained below, the Re$ubmitIt Defendants' Motion to Dismiss is denied, and BankAtlantic's Motion to Dismiss is granted in part and denied in part.

## Factual Background[1]

Plaintiff Ruth Muzuco filed this putative class action lawsuit based upon Defendants' alleged debt collection practices.  The Complaint seeks damages for alleged violations of the Fair Debt Collection Practices Act ("FDCPA") and the Federal Electronic Funds Transfer Act ("EFTA"), as well as for conversion, unjust enrichment, and civil conspiracy.

The allegations of the Complaint arise from Defendants' handling of a returned check written by the Plaintiff.  In December 2010, Plaintiff wrote a check to her attorney that was to be paid from her Bank of America account.  The check was deposited with the attorney's bank, BankAtlantic, but it was returned unpaid due to insufficient funds.  Typically when a check is returned for insufficient funds, the writer's bank returns the check to the depositor's bank, which in turn gives it back to the depositor.  In this case, however, BankAtlantic allegedly employed a different procedure.  According to the Complaint, BankAtlantic entered into a contractual arrangement, and formed a joint venture, with the Re$ubmitIt Defendants to collect debts for returned checks on behalf of BankAtlantic customers.

---

[1] The Court takes these facts from the Complaint and assumes their truth for purposes of deciding these Motions pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See Cinotto v. Delta Air Lines Inc.*, 674 F.3d 1285, 1291 (11th Cir. 2012).

Under this agreement, BankAtlantic allegedly would send all account holders a mailing that announces their enrollment in a check recovery service run by the Re$ubmiIt Defendants. The account holders did not have to respond to the mailing in any way; the enrollment was automatic. After enrollment, BankAtlantic would automatically send any returned check deposited by a BankAtlantic account holder to Re$ubmitIt for collection. In the process of attempting to collect the debts, the Re$ubmiIt Defendants assessed a fee upon the writers of bad checks and then shared those fees with BankAtlantic.

In this case, pursuant to the agreement described above, BankAtlantic allegedly forwarded Plaintiff's returned check to Re$ubmitIt, who made a second attempt to collect from Plaintiff's bank account. Plaintiff alleges that the Re$ubmitIt Defendants communicated with her bank, Bank of America, to determine whether she had sufficient funds in her account to cover the representment. Upon representment, however, the original check was again returned for insufficient funds.

At the same time, the Re$ubmitIt Defendants allegedly initiated an automated electronic funds transfer, in the form of an electronic check, from Plaintiff's bank account, in the amount of $50. The electronic check appeared to be from the Plaintiff and made payable to Plaintiff's lawyer, the BankAtlantic account holder. The memo portion of the check read, "NSF FEE FOR CHECK 378," which was the number of the returned check, and the signature line contained the following:

> RE$UBMITIT, LLC 866-860-5906
> **Authorized by your depositor**
> No signature necessary
> **Pre-authorized by your account holder**

According to the Complaint, neither Plaintiff nor her lawyer actually authorized the $50 electronic check, which cleared Plaintiff's account and was subsequently shared between the Re$ubmitIt Defendants and BankAtlantic.

Through these acts, Plaintiff alleges that Defendants' actions violated the FDCPA and EFTA and amounted to conversion, unjust enrichment, and civil conspiracy. The Re$ubmitIt Defendants move to dismiss the FDCPA and EFTA claims, as well as the unjust enrichment and civil conspiracy counts. BankAtlantic seeks dismissal of the entire Complaint.

## Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must therefore articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *Twombly*, 550 U.S. at 557. "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys.*, 520 F.3d 1308, 1309 (11th Cir. 2008). "[O]f course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.

## Legal Analysis

The Court finds the Complaint adequately pled in most respects. The Plaintiff shall be given leave to specifically allege that BankAtlantic is "debt collector" under the FDCPA. Otherwise, Plaintiff has properly stated a claim under the FDCPA, the ETFA, and for conversion, unjust enrichment, and civil conspiracy.

### A.  Fair Debt Collection Practice Act

The Court finds that Plaintiff's claim under the FDCPA should not be dismissed with prejudice.  Plaintiff has properly alleged an unlawful third-party communication and has properly alleged facts that may establish BankAtlantic as a "debt collector."  The Court will permit Plaintiff leave to amend in order to expressly include the allegation that BankAtlantic is a "debt collector" under the FDCPA, however.

#### 1.  *Unlawful Third-Party Communications under the FDCPA*

Defendants first argue that they are not liable under the FDCPA, section 1692c(b), because Plaintiff fails to allege an unlawful communication between them and a third party in connection with the collection of a debt.  Section 1692c(b) provides, in relevant part, that:

> without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a postjudgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

15 U.S.C. § 1692c(b).  The Complaint alleges that "Defendants Re$ubmitIt and BSG unlawfully communicated with the Plaintiff's bank – Bank of America – in violation of section 1692c(b)[.]" Compl. ¶ 52.

Defendants move to dismiss, arguing that a debt collector's communications with the debtor's bank are not considered improper third party communications under the FDCPA, where a check has been returned for insufficient funds.  BA Mot. at 6.  Relying on a twenty year old case from the District of South Dakota, *Pearce v. Rapid Check Collection, Inc.*, 738 F. Supp. 334 (D.S.D. 1990), Defendants advance the policy argument that the FDCPA was not meant to bar the type of communications here because "[c]ontacting the bank on which an NSF check was drawn is not an illegitimate collection practice, nor is it an invasion of the debtor's privacy, because the bank knows the balances and activities of its customers' accounts and a debt collector could reasonably believe that the payor bank may be obligated upon the instrument prepared by its account holder."  BA Mot. at 7.

In *Pearce*, a debt collector contacted both the plaintiff and her bank, threatening suit if the outstanding debt, stemming from two bad checks, was not promptly paid.  The district court found that "the bank in this case can hardly be considered a third party," within the meaning of

section 1692c(b).  *Pearce*, 738 F. Supp. at 337.  In reaching that conclusion, the court relied upon legislative history suggesting the FDCPA was intended to prevent a debt collector from contacting "third persons such as a consumer's friends, neighbors, relatives, or employer," because "[s]uch contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." *Id.* (citation omitted).  In view of such purposes, the court concluded that no FDCPA violation had occurred because "[t]he letter in issue was sent to the same bank on which the bad checks were written, so there [was] no chance that the letter was used to embarrass the plaintiff, and no chance that an invasion of privacy or loss of employment could occur." *Id.*

This Court declines to follow *Pearce*.  "As with any question of statutory interpretation," this Court must "begin by examining the text of the statute to determine whether its meaning is clear."  *See Harry v. Marchant*, 291 F.3d 767, 770 (11th Cir. 2002).  Here, unless the debtor consents, section 1692c(b) prohibits any debt collector from communicating, for debt collection purposes, with "any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector."  15 U.S.C. § 1692c(b).  Defendants do not argue that they are among the specifically-listed parties to whom communications are allowed under the statute.  Instead, their argument is one of policy, based on the FDCPA's purported purposes.

The statutory provision's meaning is plain, however.  As written, it permits a debt collector to communicate with only certain expressly named third parties, absent consent of the debtor.  Under "the time-honored maxim of construction, *expressio unius est exclusio alterius*, the inclusion of specific things implies the exclusion of those not mentioned[.]" *See Cast Steel Prods., Inc. v. Admiral Ins. Co.*, 348 F.3d 1298, 1303 (11th 2003).  Defendants' argument fails because "debtor's bank" is not included, in section 1692c(b), among the third parties to whom a debt collector may permissibly communicate.  The language of the provision is clear and unambiguous; and absent any ambiguity, the Court finds no occasion to resort to legislative history, as did the district court in *Pearce*.  *See In re Paschen*, 296 F.3d 1203, 1207 (11th Cir. 2002) ("we need not resort to extrinsic evidence, such as legislative history, to discern a statute's meaning if the statute's language is unambiguous"); *United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent[.]").

Further, irrespective of the *Pearce* decision's wisdom, the facts at issue there are not on all fours with those at play here.  In *Pearce*, the defendant debt collector filed criminal charges against the plaintiff over two bad checks, but the plaintiff was acquitted based on the argument that her bank should have covered the overdrawn checks.   *Pearce*, 738 F. Supp. at 336. Thereafter, the defendant debt collector sent a letter to plaintiff and her bank, threatening civil suit if the debt was not paid.  *Id.*   Within that unique set of facts, the court found that the defendant debt collector had "legitimate reason" to contact the plaintiff's bank because, given the plaintiff's successful defense in the criminal case, "the defendant could reasonably have thought that the bank was at least partly liable for the money owed it." *Id.* at 337.  To deem the bank a third party under the FDCPA would, according to the district court, have the effect of "ignoring [the bank's] possible involvement in the case, as being possibly liable, at least to the plaintiff, on the claim of the defendant." *Id.*  Clearly, this case presents no comparable situation and, for this reason as well, the Court finds no occasion to apply *Pearce* here.

### 2.  *Vicarious Liability under the FDCPA*

The Court finds that Plaintiff may seek to hold BankAtlantic vicariously liable under the FDCPA.  BankAtlantic argues that it cannot be held liable because it was not a "debt collector," and Plaintiff's claim should be dismissed because "a party who is not a debt collector cannot be held vicariously liable for collection actions taken by a third party debt collector."  BA Mot. at 4.

The FDCPA defines "debt collector" as anyone who uses interstate commerce for "any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[2]  15 U.S.C. 1692a(6).  "Courts have specifically held that an entity (or individual) which does not meet the definition of 'debt collector' cannot be held vicariously liable for unlawful collection actions taken on its behalf by an entity which is a debt collector." *Bent v. Smith, Dean & Assocs., Inc.*, 2011 WL 2746847, at *3 (M.D. Fla. July 14, 2011).  Conversely, courts have also held that "a company meeting the definition of a 'debt collector' may be held vicariously liable for the actions of a second company acting on its behalf."  *Id.* (citations omitted); *see also McNichols v. Moore Law Group*, 2012 WL 667760, at *3 (S.D. Cal. Feb. 28,

---

[2] The statutory definition of "debt collector" contains several carve outs and exceptions, but the Defendants do not argue that any apply here.

2012) ("Vicarious liability under the FDCPA has been restricted to principals who themselves are statutory 'debt collectors.'").

While the Complaint does not contain the express allegation that "BankAtlantic is a 'debt collector' under the FDCPA," there are enough factual allegations, which if proven, could establish that BankAtlantic was, through its auto-enrollment check recovery program and fee-sharing arrangement with the Re$ubmitIt Defendants, "attempt[ing] to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. 1692a(6). For example, the Complaint alleges that BankAtlantic entered into a contractual agreement and joint venture with the Re$ubmitIt Defendants to collect on returned checks for account holders; that it automatically enrolls its account holders in this service; that it initiates the debt collection process by routing returned checks to the Re$ubmitIt Defendants for collection and completes the debt collection process by depositing recovered funds into customers' accounts; and that it shares with the Re$ubmitIt Defendants the $50 fees charged in the course of collecting the debts. Compl. ¶¶ 26-30, 55, 57. Because these allegations, if proven, may establish that BankAtlantic acted as a "debt collector" under the statute, the Court declines to dismiss the FDCPA claim with prejudice. The Court will nonetheless require Plaintiff to amend the Complaint to include an express allegation that BankAtlantic was a "debt collector" under the statute.

### B. Electronic Funds Transfer Act

The Court will not dismiss the EFTA claim. Defendants argue that even though Plaintiff has alleged that the $50 service charge was carried out electronically, Plaintiff's attachment to the Complaint shows that a paper check was actually used, which renders the EFTA inapplicable.

"To state a claim pursuant to the EFTA, Plaintiff must allege that the transactions at issue are electronic fund transfers as defined by the Act." *O'Donnell v. Wachovia Bank*, 2010 WL 1416986, at *4 (S.D. Fla. Apr. 7, 2010) (Cohn, J.). The term "electronic fund transfer" means:

> any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, or computer or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, direct deposits or withdrawals of funds, and transfers initiated by telephone.

15 U.S.C. § 1693a(6).

The Complaint alleges that the Re$ubmitIt Defendants "initiated an ACH electronic funds transfer in the form of an electronic check" for $50.  Compl. ¶ 20.  The Complaint states that the "electronic check" is attached as Exhibit B.  *Id.*  Defendants contend that the $50 transaction does not fall within the EFTA, as a matter of law, because Plaintiff's exhibit shows that the transaction was originated by paper check.  This argument is based on the rule that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."  *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007); *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).

The Court disagrees with Defendants.  The attachment to the Complaint is a photo copy of what may or may not be a paper check.  As Defendants point out, it bears some indicators of a paper check, such as, for example, the words "THIS CHECK IS VOID WITHOUT A BLUE & GREEN BACKGROUND AND AN ARTIFICIAL WATERMARK ON THE BACK – HOLD AT ANGLE TO VIEW."  BA Mot. at 8-9; Re$ub. Mot. at 6.  On the other hand, the attachment may well be an electronically generated check merely made to mimic a paper instrument.  The Court notes, for example, that the routing and account numbers are printed outside the four corners of the check.  Compl., Ex. B.  That such numbers are absent from the face of the check itself suggests it may have been an electronic check; all paper checks contain such numbers within their confines.

In any case, the Court need not speculate about whether the check is, in fact, a paper instrument or not.  On motion to dismiss, the Complaint's allegations control unless they are **clearly** contradicted by a document attached thereto. *Degirmenci v. Sapphire-Fort Lauderdale, LLP*, 693 F. Supp. 2d 1325, 1341 (S.D. Fla. 2010) (Dimitrouleas, J.) ("Where the allegations of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified.").  Here, for the reasons just identified, that is not the case.  The Court simply cannot say for certain that the attachment contradicts Plaintiff's allegations.  Dismissal of the EFTA claim is therefore not appropriate.  *See Reddy v. Bisaria*, 2010 WL 5148468, at *3 (S.D. Fla. Dec. 13, 2010) (Marra, J.).

### C.  Conversion

The Court will not dismiss the conversion count.  BankAtlantic argues that the Complaint fails to allege "any affirmative act by [it] depriving Plaintiff of money"; instead, "[t]he Complaint alleges only that BankAtlantic had a passive revenue sharing arrangement with

Re$ubmitIt and BSG."   BA Mot. at 10.   According to BankAtlantic, "that allegation is insufficient to show an *act* by BankAtlantic depriving Plaintiff of money." *Id.* at 10-11.

The Court disagrees.   Plaintiff has alleged that BankAtlantic and the Re$ubmitIt Defendants entered into an agreement constituting either a joint venture or an agency relationship by which the Re$ubmitIt Defendants collected the $50 fee and shared it with BankAtlantic.   Compl. ¶¶ 26-30, 55, 57.   The Complaint further alleges that the Re$ubmitIt Defendants knowingly obtained property belonging to Plaintiff in the form of the $50 fee, and intentionally and wrongfully exercised dominion, ownership, and control over it notwithstanding Plaintiff's right of immediate possession. *Id.* ¶¶ 80, 81.

These allegations are sufficient to state a claim for conversion.   "The essence of the tort is not the acquisition of the property; rather, it is the wrongful deprivation." *Nat'l Union Fire Ins. Co. of Penn. v. Carib Aviation, Inc.*, 759 F.2d 873, 878 (11th Cir. 1985).   Stated differently, the crux of conversion is not so much the act of taking, but rather the continued deprivation of the property, even by a party that did not itself directly participate in the taking. *See Joseph v. Chanin*, 940 So. 2d 483, 486 (Fla. 4th DCA 2006).   Here, however, BankAtlantic allegedly did have an active role in the taking; to wit, it entered into an agreement with the Re$ubmitIt Defendants whereby they would collect the $50 service fees and share them with BankAtlantic. If the arrangement was a joint venture, then BankAtlantic is equally liable with Re$ubmitIt. *See Fla. Tomato Packers, Inc. v. Wilson*, 296 So. 2d 536, 539 (Fla. 3d DCA 1974) ("Participants in a joint venture are each liable for the torts of the other[.]").   If the arrangement was an agency, then BankAtlantic, as the principal, is liable for the funds converted by Re$ubmitIt within the scope of the agency. *See, e.g.*, *Hunt v. Liberty Lobby*, 720 F.2d 631, 649 (11th Cir. 1983) ("Under Florida law, a principal is liable for the torts of his agents.").   In either case, the allegations are sufficient to withstand dismissal.

### D.  Unjust Enrichment

The Court finds Plaintiff's unjust enrichment claim should not be dismissed.   Defendants contend that the claim must go because Plaintiff has an adequate remedy at law.   BA Mot. at 11-13; Re$ub. Mot. at 8-10.   Some cases support Defendants' position, while others hold that an unjust enrichment claim is barred only where the plaintiff has a **contractual** legal remedy. *Compare Matthews v. Am. Honda Motor Co., Inc.*, 2012 WL 2520675, at *2 (S.D. Fla. June 6, 2012) (Williams, J.) ("unjust enrichment is an equitable remedy that is available only when the

plaintiff lacks an adequate remedy at law"), *and Jovine v. Abbott Labs., Inc.*, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011) (same), *with State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*, 427 F. App'x 714, 722 (11th Cir. 2011) ("It is generally true that equitable remedies are not available under Florida law when adequate legal remedies exist. However, that rule does not apply to unjust enrichment claims. It is only upon a showing that an express contract exists . . . that the unjust enrichment . . . count fails.") (citations omitted), *and Mobil Oil Corp. v. Dade Cnty. Esoil Mgmt. Co.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997) (Highsmith, J.) (same).  Further muddying the waters are Florida cases holding that unjust enrichment claims are legal, and not equitable, in nature.  *See, e.g.*, *Am. Safety Ins. Srv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) ("an action for unjust enrichment is an action at law, not in equity").

At this time, the Court need not attempt to reconcile these views.  Under the Federal Rules, a plaintiff may allege arguably inconsistent theories in the alternative.  *See, e.g.*, *Wiand v. EFG Bank*, 2012 WL 750447, at *8 (M.D. Fla. Feb. 8, 2012) (denying motion to dismiss unjust enrichment claim because "alternative pleading is permitted by the Federal Rules of Civil Procedure"); *Adelphia Cable Partners, Inc. v. E & A Beepers Corp.*, 188 F.R.D. 662, 666 (S.D. Fla. 1999) (King, J.) ("Although equitable relief ultimately may not be awarded where there exists an adequate remedy at law, Plaintiff certainly may plead alternative equitable relief.").  Put differently, "[a] plaintiff is not prevented from asserting an equitable cause of action merely because the plaintiff also alleged an adequate legal remedy.  Rather, it is the existence of a legal remedy that bars an equitable cause of action."  *See Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1331 (S.D. Fla. 2010) (Cohn, J.).  Thus, while a plaintiff may not recover under both legal and equitable theories, there is no basis for dispensing with Plaintiff's unjust enrichment claim at the motion to dismiss stage.  *See, e.g.*, *Healthcare Appraisers, Inc. v. Healthcare FMV Advisors, LLC*, 2011 WL 4591960, at *10 (S.D. Fla. Sept. 30, 2011) (Marra, J.); *Mobil Oil Corp.*, 982 F. Supp. at 880.

### E.  Civil Conspiracy

The Court declines to dismiss the civil conspiracy count.  A key element of a claim for civil conspiracy is an agreement to do an unlawful act or to perform a lawful act by unlawful means.  *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (setting forth elements of civil conspiracy under Florida law).  BankAtlantic contends this claim should be dismissed because "the only alleged 'unlawfulness' is the alleged violations of the FDCPA and

the EFTA, and this tag-along civil conspiracy claim necessarily fails alongside those two underlying claims[.]"  BA Reply at 13-14; BA Mot. at 14.  The Court rejects this argument, having already found the FDCPA and EFTA claims sufficiently pled.

The Court also rejects the Re$ubmitIt Defendants' contention that it should decline to exercise supplemental jurisdiction over the state law civil conspiracy claim.  The Re$ubmitIt Defendants argue, in conclusory fashion, that "this last state law claim enjoys *no* common basis [of fact] with the substantive federal claims," yet they also concede that the civil conspiracy count is tied to "the supposed arrangement between BankAtlantic, BSG and Re$ubmitIt to share down-stream revenues BSG and Re$ubmitIt might receive."  Re$ub. Mot. at 11.  This concession defeats their argument.  There is a common nucleus of fact supporting all claims because each arises from the alleged arrangement between BankAtlantic and the Re$ubmitIt Defendants.  The Re$ubmitIt Defendants' remaining argument – that "the important factors of judicial economy, convenience, fairness and comity all argue against this Court's retention of this last state law claim" – is similarly unavailing.  Re$ubmitIt Mot. at 12.  The Re$ubmitIt Defendants fail to offer any reasons why it would be inefficient or unfair for this Court to exercise jurisdiction over the civil conspiracy claim, and the Court is unaware of any.  Therefore, the civil conspiracy count will not be dismissed.

<u>Conclusion</u>

For the reasons explained above, it is hereby **ORDERED and ADJUDGED** that the Re$ubmitIt Defendants' Motion to Dismiss is **DENIED** and BankAtlantic's Motion to Dismiss is **GRANTED IN PART**.  The Court finds that Plaintiff has, for the most part, adequately pled her federal and state law claims.  The Court dismisses the FDCPA claim, without prejudice, and grants Plaintiff leave to amend so that she may add the express allegation that BankAtlantic is a "debt collector" under the FDCPA.  In all other respects, the Complaint will not be dismissed. Plaintiff shall file an Amended Complaint by **August 15, 2012**.

**DONE and ORDERED** in Chambers at Miami, Florida on August 7, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

Copies to:
*Counsel of Record*
*U.S. Magistrate Judge*